## Siebenheller v. Siebenheller.

*Divorce — Libel by husband — Cruel and barbarous treatment — Indignities—Act of June 25, 1895, P. L. 308.*

A husband will not be granted a divorce on the ground of cruel and barbarous treatment and indignities to his person where there is no evidence that respondent ever threatened his life or subjected him to physical violence, while the testimony shows merely nagging, fault finding and ill temper, and that on one occasion she intimated to an officer that libellant might be guilty of larceny, but that this charge was not repeated and was not made to any one else.

Libel for divorce. C. P. No. 5, Phila. Co., March T., 1925, No. 498.

*S. R. Blumenthal,* for libellant; *T. S. Guerin,* for respondent.

SMITH, J., July 26, 1926.—In an action for divorce in which the husband is the libellant, the respondent is charged with cruel and barbarous treatment and indignities to the person. The master recommended a divorce. To the report of the master exceptions were filed and the matter argued.

The libellant and the respondent were married in the City of Philadelphia on June 21, 1916. At that time the respondent, a widow with three children, maintained a rooming-house at No. 1209 Snyder Avenue in that city. To the home of the respondent the libellant, a sailor of the United States Navy, came as a boarder in June of 1912, and lived there until they were married. The libellant at the time of the hearing was a man of thirty-nine years of age, while the respondent was a woman fifty years of age. During the time that the libellant lived at the home of the respondent, she maintained her home and herself by moneys received from boarders and such assistance as she got from her three grown-up children who were working.

A reading of the testimony discloses that from the time of the marriage of the libellant and the respondent, several times from 1916 until February, 1923, he was out of work for certain lengths of time, ranging from two or three weeks to three or four months, and during that space of time, according to the testimony of the libellant, there was no trouble between the parties. In February, 1923, the libellant was appointed to the police force of the City of Philadelphia, and he testified that from that time on until he finally left on Nov. 15, 1924, the respondent was guilty of cruel and barbarous treatment and indignities to his person. From a reading of certain letters which the libellant admits were written by him and in which he admits being in the wrong, it is clear that the parties to this action had many disagreements. According to the testimony of the libellant they were separated in 1920, at one time for three months, at a later period for two or three days, and also sometime in 1921 they were apart for a period of time. In the letters above referred to the libellant admits that the disagreements occurring around the times the letters were written were due to his fault and his bad temper, and states that the respondent was not at fault and asked for her forgiveness.

The libellant testified that from 1923 down to the date when he left, on many occasions the respondent called him a liar, a bum, a whore-master and a son-of-a-bitch; and that she on one occasion swept playing-cards from the table on which he was playing solitaire and threw a book at him. There is no evidence that she ever threatened his life or ever put him in fear of his life. He testified that she would argue with him and that she would finish the argument by crying. There was evidence of an indignity, as testified to by the libellant, that on one occasion, when the libellant brought home to the respondent two bottles of perfume, she went to the lieutenant of the police

having supervision over the libellant, and suggested that these bottles were stolen.

As a result of the treatment received from the respondent, the libellant testified that he lost fifteen pounds in weight. There was no evidence to corroborate the libellant. All the material averments were contradicted by the respondent and her grown-up children. The respondent admits, however, that she did suggest to the lieutenant of the police that the two bottles of perfume might be stolen, and that she did throw a paper magazine at the libellant one time. The respondent said that she had spoken to the police lieutenant two or three months after the libellant had gone from her home, but that she had not repeated this same remark to any one else.

The Act of June 25, 1895, P. L. 308, permits a husband to get a divorce from the wife upon the grounds of cruel and barbarous treatment or indignities to his person where she has rendered the condition of her husband intolerable or life burdensome. In Fay v. Fay, 27 Pa. Superior Ct. 328, Judge Orlady states that cruel and barbarous treatment mentioned in the statute includes acts which endanger life, but it is not restricted to them. He furthermore states "that, in determining whether there was cruel and barbarous treatment within the meaning of the statute, the whole conduct of the wife towards her husband during the period of the alleged ill-treatment should be considered."

In Platt v. Platt, 38 Pa. Superior Ct. 551, it was held that where the evidence showed the wife as irritable, nagging, of bad temper and lacking in affection for her husband, that she made indefinite threats but did not carry them out, and never offered him physical violence, it did not amount to legal cruelty.

The case of Mamaux v. Mamaux, 64 Pa. Superior Ct. 131, defines what legal cruelty is, and states that a husband would be entitled to a divorce on the ground of cruel and barbarous treatment where the evidence showed that the wife assaulted him twice, one of the assaults being of a very violent nature; that she bought a horsewhip to use on him; that she filed proceedings in divorce which she discontinued; that she filed a petition in lunacy which she also discontinued; that she filed an affirmation charging him with adultery but abandoned the charge; and that she had sought to have reinstated a criminal proceeding instituted against him by another party, in which a nolle prosequi had been entered.

Schulze v. Schulze, 33 Pa. Superior Ct. 325, stated that a husband would not be entitled to a divorce upon the ground of cruel and barbarous treatment merely because the wife was fault-finding, nagging, ill-tempered, became occasionally intoxicated and at times neglectful of the preparation of meals.

In Ponthus v. Ponthus, 66 Pa. Superior Ct. 257, a husband was granted a divorce on the ground of cruel and barbarous treatment where the respondent had persistently and for a long period of time accused him in the presence of others of vile and degraded conduct and of crimes, the punishment of which would have been long imprisonment.

In this case, it is true that the respondent on one occasion intimated to the superior officer of the libellant that he might be guilty of larceny. This time was not definitely fixed by the libellant, and the respondent testified that it happened about three months after he had left. The other testimony, at its most, amounts to the case of a nagging wife who offered no physical violence to the libellant. While the libellant at the time of the marriage was a strong man in the prime of life, the respondent is a woman about ten years his senior.

Siebenheller v. Siebenheller.

In Schulze *v.* Schulze, 33 Pa. Superior Ct. 325, it was held that mutual angry altercations would not entitle the libellant to a decree in divorce.

The evidence, when carefully considered, is not convincing that there were acts of cruel and barbarous treatment or indignities to the person of the libellant proved with sufficient clarity, definiteness or precision.

The exceptions to the master's report are hereby sustained and the libel is dismissed.